IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SANDRA L. BAKER, M.D.

    Plaintiff,

    v.

DENIS MCDONOUGH, Secretary,
U.S. Department of Veterans Affairs,

    Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Dr. Sandra Baker, by and through her counsel Madeline Collison and Marisa Williams, alleges:

**JURISDICTION**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA"); and the Equal Access to Justice Act, 28 U.S.C. § 2412, *et. seq.* ("EAJA").

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

**PARTIES**

3. Plaintiff Dr. Sandra Baker ("Plaintiff") is a is a citizen of the United States and a resident of and domiciled in the State of Colorado.

4.  At all times relevant hereto, Plaintiff was a federal civilian employee of the United States Department of Veterans Affairs, (hereinafter the "VA" or the "Agency").

5.  The VA operates multiple medical centers throughout the United States. At the time of the events at issue in this case, Plaintiff was employed by the VA as an Emergency Room Attending Physician and worked at the Rocky Mountain Regional VA Medical Center located in Aurora, Colorado (the "RMR-VAMC").

6.  Defendant Denis McDonough is the Secretary of the U.S. Department of Veterans Affairs and, in that capacity, he is the appropriate nominal defendant for this action.

7.  The VA has continuously, and at all times relevant to this case, been an employer within the meaning of Title VII, the ADEA, and the EAJA.

## EXHAUSTION OF REMEDIES

### FIRST EEO COMPLAINT

8.  On August 15, 2019, Plaintiff initiated the informal administrative Equal Employment Opportunity ("EEO") complaint process described in 29 C. F. R. § 1614.105 by contacting an Agency EEO counselor. Plaintiff alleged that the VA had discriminated against her based on her sex in violation of Title VII; her age in violation of the ADEA; and in retaliation for her prior EEO participation and opposition activity.

9.  More specifically, Plaintiff asserted that beginning on or about June 13, 2019, the RMR-VAMC subjected her to disparate treatment and created a hostile work environment when it placed her under heightened scrutiny, undertook an unwarranted patient case review, and reduced her scope of practice from both urgent and critical patient care to only urgent patient care. Plaintiff further alleged that the RMR-VAMC deviated from standard

practice and procedure when it took these actions without first affording Plaintiff the opportunity to review and respond to the evidence the RMR-VAMC alleged supported these actions.

10.  In support of her informal complaint, Plaintiff also alleged that on or about July 24, 2019, the RMR-VAMC improperly subjected her to an unwarranted "Focused Clinical Care Review," and on or about August 5, 2019, it wrongfully revoked her clinical privileges and gave her an involuntary, directed reassignment from her position as a physician in Emergency Medicine to a position performing administrative assignments in the Public Affairs Office.

11.  Pursuant to 29 C. F. R. § 1614.105(a)(1), Plaintiff's informal complaint was timely initiated as the discrete acts about which she complained occurred within the 45 day filing period preceding her August 15, 2019 contact with the EEO Office. Likewise, Plaintiff's harassment/hostile work environment claim was timely initiated because at least one of the incidents supporting that claim occurred during the informal filing period.

12.  On November 13, 2019, in compliance with 29 C. F. R. § 1614.105(d), the Agency informed Plaintiff that the processing of her informal EEO complaint had been completed and it issued her a "Notice of Right to File a [formal] Discrimination Complaint" within fifteen days of her receipt of the same.

13.  Plaintiff received the "Notice of Right to File" on December 3, 2019. She filed her formal First Complaint on December 10, 2019, within the fifteen business-day filing period.

14.  Like her informal complaint, Plaintiff's formal complaint alleged harassment, discrimination and retaliation in violation of Title VII and the ADEA. The VA assigned Case

No. 2003-0554-2019105166 to Plaintiff's First Complaint.

15.  As provided at 29 C. F. R. § 1614.106(e), on February 3, 2020, the VA issued a letter accepting Plaintiff's First Complaint and amending the same to include its December 16, 2019 decision to remove Plaintiff from federal employment and revoke her medical privileges.

16.  The VA conducted an investigation into Plaintiff's First Complaint pursuant to 29 C. F. R. § 1614.108. On July 27, 2020, the VA provided Plaintiff with a copy of the report of investigation and a notice informing her that she had the right to request a hearing before the U.S. Equal Employment Opportunity Commission within 30 days. *Id.* at §§ (f).

17.  On August 5, 2020, before the 30-day deadline expired, Plaintiff filed a request for an administrative hearing before the Equal Employment Opportunity Commission ("EEOC") on her First Complaint.

18.  The EEOC designated Plaintiff's First Complaint "EEOC Case No. 541-2020-00163X" and assigned the matter to an administrative judge.

19.  More than 180 days have passed since Plaintiff formally filed her First Complaint. The EEOC has not yet held a hearing and the VA has not taken final action. Therefore, as provided in 29 C. F. R. § 1614.407(b) and (g), Plaintiff has exhausted her administrative remedies and she has the right to file her First Complaint for trial *de novo* in the U.S. District Court for the District of Colorado.

## SECOND EEO COMPLAINT

20.  On August 2, 2021, Plaintiff initiated the informal administrative EEO complaint process described in 29 C. F. R. § 1614.105 by contacting an Agency EEO counselor. She

alleged that the VA had discriminated against her based on her sex in violation of Title VII; her age in violation of the ADEA; and in retaliation for her prior EEO participation and opposition activity.

21. More specifically, Plaintiff asserted that the VA subjected her to disparate treatment and created a hostile work environment when: 1) beginning on or about July 2, 2021, the RMR-VAMC improperly denied Plaintiff's request for sick leave and required her to use Leave Without Pay; 2) Plaintiff learned the RMR-VAMC had wrongly subjected her to another Focused Professional Practice Evaluation for Cause; and 3) beginning on or about July 28, 2021, the RMR-VAMC improperly denied Plaintiff's request for Leave Without Pay.

22. Pursuant to 29 C. F. R. § 1614.105(a)(1), Plaintiff's initiation of her informal complaint was timely because each of the acts about which she complained occurred within the 45 days preceding her initial contact with the EEO Office.

23. On October 14, 2021, the VA informed Plaintiff that, pursuant to 29 C. F. R. § 1614.105(d), it had completed the processing of her informal EEO complaint and it issued Plaintiff a "Notice of Right to File a [formal] Discrimination Complaint" within fifteen days.

24. Plaintiff received the "Notice of Right to File" on October 15, 2021. She formally filed her Second Complaint on November 1, 2021, within the fifteen business-day deadline.

25. Like her informal Second Complaint, Plaintiff's formal Second Complaint alleged harassment, discrimination and retaliation in violation of Title VII and the ADEA. The VA assigned Case No. 2003-0554-2021104992 to the Second Complaint.

26. Consistent with 29 C.F.R. § 1614.106(e), on December 1, 2021, the VA issued a letter accepting Plaintiff's Second Complaint and amending the same to include allegations

of discriminatory conduct alleged to have taken place after Plaintiff initiated her informal complaint. The amendment expressly included Plaintiff's involuntary resignation on November 30, 2021.

27. The Agency conducted an investigation into Plaintiff's Second Complaint as required by 29 C.F.R. § 1614.108, and pursuant to subsection (f) of the regulation, it provided Plaintiff with a copy of the report of investigation and a notice that she had the right to request a hearing before the EEOC within 30 days.

28. Plaintiff filed her hearing request on June 20, 2022, within 30 days of her receipt of the notice. The EEOC assigned Case No. 540-2022-00246X to Plaintiff's EEO complaint and assigned the matter to an administrative judge.

29. More than 180 days have passed since Plaintiff filed her formal EEO complaint. The EEOC has not yet held a hearing and the Agency has not taken final action. Therefore, pursuant to 29 C. F. R. §1614.407(b) and (g), Plaintiff has exhausted her administrative remedies and has the right to file her First EEO complaint for trial *de novo* in the U.S. District Court for the District of Colorado.

## SUBSTANTIVE FACTUAL ALLEGATIONS

30. Plaintiff Dr. Sandra Baker is female and, at the time of the events at issue in this case, she was over the age of 40.

31. Prior to her retirement on December 1, 2021, Plaintiff worked for the VA for 32 years. She began working for the Agency as a fee-basis physician. In July 2002 she became an Emergency Room physician at the RMR-VAMC, a position she held until she retired. Between 2008 and 2016, Plaintiff served as the Chief of the Emergency Department.

32. At all times relevant to this case, and indeed throughout her tenure in the Emergency Department, Plaintiff correctly diagnosed her patients, she provided appropriate care and proper attention to her patients, her patients did well and did not suffer negative outcomes from the treatment she provided, she had very few cases sent to the Peer Review Committee and received no high level findings from that committee, and she was never the subject of a malpractice claim.

33. At all times relevant to this case, the VA and Plaintiff's supervisors were aware of Plaintiff's sex, which was both observable and a matter of Agency record.

34. At the time of the events at issue in this case, the VA and Plaintiff's supervisors were aware she was over the age of 40. That fact was both observable (based on the number of years she had worked for the Agency) and a matter of Agency record.

35. Plaintiff participated in statutorily protected activity in 2015 when she filed an administrative EEO discrimination complaint against the RMR-VAMC.

36. Prior to the events at issue in this case, the VA and Plaintiff's supervisors were aware of Plaintiff's 2015 protected activity as evidenced by the facts that: 1) she filed her 2015 EEO complaint with the VA's EEO Office; 2) the VA conducted an administrative investigation into the 2015 EEO complaint; 3) some of the RMR-VAMC employees interviewed during the investigation of the 2015 EEO complaint are directly involved as alleged discriminating officials in the present case; and 4) the VA entered into a settlement agreement with the Plaintiff to resolve the 2015 EEO complaint.

37. Plaintiff also participated in protected activity in March 2019, when she informed the RMR-VAMC that Dr. Javier Perez, the individual the Agency was considering

for the position of Chief of Emergency Medicine, was one of the men who had harassed her and discriminated against her in her 2015. Plaintiff objected to Dr. Perez' appointment as Chief because, as she expressed to her chain of command, she feared he would retaliate against her if appointed to the position.

38.  Despite Plaintiff's expressed concerns, the RMR-VAMC placed Dr. Perez into the position of Chief of Emergency Medicine. Dr. Perez then became Plaintiff's immediate supervisor. He remained her immediate supervisor until Plaintiff retired.

39.  At the time of the events at issue in this case, Plaintiff's second level supervisor was Chief of Service Dr. Carl Bonnett, who was male. Her third level supervisor was Chief of Staff Dr. Clifford Parmley, who was male. Dr. Ronald Robinson, also male, later replaced Dr. Parmley as Chief of Staff. The RMR-VAMC Director, who was not a doctor, was Michael Kilmer – also male.

## FIRST CLAIM FOR RELIEF

(Disparate Treatment Based on Sex and/or Age)

40.  Plaintiff incorporates paragraphs 1-39 of this Complaint as if set forth fully herein.

41.  On or about June 13, 2019, the RMR-VAMC deviated from standard Agency procedure when Plaintiff's supervisors unilaterally subjected Plaintiff to a patient case review instead of sending her cases to the Peer Review committee, and they did so without affording her the opportunity to respond to their alleged concerns. Based on information and belief, Plaintiff's supervisors did not subject doctors outside her protected classes to such heightened scrutiny or deny them the opportunity to respond to any alleged concerns.

42. On or about June 13, 2019, the RMR-VAMC deviated from standard Agency protocol when Plaintiff's supervisors unilaterally reduced her scope of practice without affording her the opportunity to respond to their alleged concerns. Based on information and belief, Plaintiff's supervisors did not subject doctors outside her protected classes to the same treatment.

43. On or about July 24, 2019, the RMR-VAMC deviated from standard Agency protocol when Plaintiff's supervisors subjected Plaintiff to a Focused Clinical Care Review ("FCCR"), sent incomplete copies of some of her patient case files to a panel of outside reviewers, and once again failed to afford her the opportunity to respond to their alleged concerns. Based on information and belief, Plaintiff's supervisors did not subject any doctors outside her protected classes to an FCCR, send incomplete copies of their patient files to a panel of outside reviewers, or fail to afford them the opportunity to respond to any alleged concerns.

44. On or about August 5, 2019, the RMR-VAMC deviated from standard Agency protocol when Plaintiff's supervisors wrongfully revoked Plaintiff's clinical privileges without affording her the opportunity to respond their alleged concerns. Based on information and belief, Plaintiff's supervisors did not subject any doctors outside her protected classes to the same treatment.

45. On or about August 5, 2019, the RMR-VAMC deviated from standard Agency procedure when Plaintiff's supervisors reassigned her from her clinical duties as a physician in Emergency Medicine to non-clinical administrative duties in the Office of Public Affairs. Based on information and belief, Plaintiff's supervisors did not subject any

doctors outside her protected classes to the same treatment.

46. On November 22, 2019, the RMR-VAMC proposed to remove Plaintiff from federal service and to permanently revoke her clinical privileges based on one charge (with 12 specifications) of providing Substandard Clinical Care. Based on information and belief, Plaintiff's supervisors did not propose to remove or permanently revoke the clinical privileges of any doctors outside her protected classes.

47. On December 16, 2019, the RMR-VAMC issued a decision sustaining the Substandard Clinical Care charge and all 12 supporting specifications. The RMR-VAMC removed Plaintiff from federal service and revoked her clinical privileges effective December 21, 2019. Based on information and belief, Plaintiff's supervisors did not remove or permanently revoke the clinical privileges of any doctors outside her protected classes.

48. Plaintiff challenged her removal by filing an appeal with the VA's Disciplinary Appeals Board ("VA-DAB") on December 24, 2019.

49. In April 2020, after a hearing on the merits of the substandard clinical care charge and the 12 specifications RMR-VAMC had lodged against Plaintiff, the VA-DAB issued a unanimous decision completely exonerating Plaintiff. The VA-DAB found that neither the charge nor any of the 12 specifications cited in support of the charge could be sustained. The VA-DAB recommended the VA overturn the RMR-VAMC decision to remove Plaintiff and revoke her privileges.

50. On July 15, 2020, the VA issued its "Final Decision" accepting in full the VA-DAB's recommendation. In its Final Decision, the VA ordered the RMR-VAMC to cancel Plaintiff's removal and expunge the same from her records within 30 days. The VA further

ordered the RMR-VAMC to pay Plaintiff full back pay within 60 days, an order which required the RMR-VAMC to restore all the benefits Plaintiff would have received if she had not been wrongfully removed.

51. Plaintiff returned to work as a Physician in the RMR-VAMC Emergency Department in August 2020. She reported to the same RMR-VAMC chain of command that had wrongly removed her.

### SECOND CLAIM FOR RELIEF

(Harassment/Hostile Work Environment Based on Sex and/or Age)

52. Plaintiff incorporates paragraphs 1-51 of this Complaint as if set forth fully herein.

53. Plaintiff alleged in her administrative complaints, and re-alleges here, that she was subjected to harassment that was sufficiently severe or pervasive that it altered the terms, conditions and privileges of her employment and created a hostile and abusive work environment.

54. In addition to the multiple acts of disparate treatment described in paragraphs 40-51 above, which were sufficiently severe and pervasive to create a hostile work environment, the RMR-VAMC also harassed Plaintiff and added to the hostile and abusive work environment when, between June 15 and July 24, 2019, Plaintiff's supervisors feigned ignorance about the details of the case review, denied her requests for information about the same and interfered with her ability to defend herself during the case review process.

55. On August 7, 2019, Plaintiff's supervisors embarrassed her and harmed her reputation by announcing to the entire Emergency Medicine Department that Plaintiff's

clinical privileges had been revoked.

56. On October 31, 2019, Plaintiff's supervisors falsely accused her of not reducing her practice to only urgent care and told her that she did not have the potential for rehabilitation.

57. On October 31, 2019, Plaintiff's supervisors reassigned her workstation to a room filled with boxes and that did not have connectivity for a computer or telephone.

58. On November 4, 2019, Plaintiff's supervisors eliminated her email access and removed her from the VISTA and CPRS accounts she needed to do her job and to prepare to defend herself against the Agency's actions.

59. When the RMR-VAMC proposed to remove Plaintiff on November 22, 2019, it refused to provide her with the complete patient case files she needed to defend herself against the charge of providing substandard clinical care.

60. When Plaintiff challenged the Agency's decision to remove her by filing an appeal with the VA-DAB, the Agency continued its refusal to provide her with the complete patient case files she needed to defend herself against the charge of providing substandard clinical care.

61. After Plaintiff prevailed before the VA-DAB, was cleared of the charge and specifications, and returned to work in August 2020 as the VA ordered in its Final Decision, the RMR-VAMC failed or refused to pay Plaintiff the full amount of back pay or benefits to which she was entitled. In particular, the Agency failed to restore approximately 1,000 hours of sick leave and approximately 329 hours of annual leave that Plaintiff had earned.

62. Plaintiff worked and waited for more than a year for the Agency to pay her back pay and restore her benefits. On October 20, 2021, Plaintiff filed an enforcement action pursuant to 28 U.S.C. § 1361 in the U.S. District Court for the District of Colorado. She requested a Writ of Mandamus requiring the VA to comply with all the terms of its Final Decision. The enforcement action, Case No. 21-cv-02828-DDD-SKC, is still pending. However, the parties have made significant progress towards resolving the same and hope to reach a settlement agreement in short order.

63. When Plaintiff returned to work in August 2020, her supervisor deviated from standard Agency protocol by placing her on an unjustified six month "FPPE" ("Focused Professional Practitioner Evaluation"), an elevated level of review reserved for new hires, practitioners who are requesting new privileges, or doctors the "Professional Standards Board" ("PSB") has determined provided substandard care. Plaintiff was not a new hire, was not requesting new privileges, and the PSB had not determined that she provided substandard care. Plaintiff should not have been subjected to this elevated level of scrutiny.

64. On April 26, 2021, Plaintiff's supervisor issued her an unwarranted and condescending "Letter of Expectations" instructing her, among other things, that she must follow the chain of command and bring any concerns she had to him before going to his supervisor. Plaintiff perceived this letter as an attempt to intimidate her and keep her from voicing any complaints about her supervisor.

65. Plaintiff's supervisor deviated from standard Agency protocol by assigning a newly hired doctor (male) who was Plaintiff's peer, not a supervisor, to evaluate her performance under the FPPE. The assignment of a peer to rate her was unprecedented,

inappropriate, embarrassing, and it constituted yet another layer of scrutiny to which she should not have been subjected.

66. On or about May 12, 2021 Plaintiff's supervisor harassed her by falsely accusing her of creating a hostile work environment for him, and her second level supervisor escalated the harassment by appointing a physician from another VAMC to conduct a fact finding investigation into her supervisor's false allegation.

67. When Plaintiff's peer rated her performance under the FPPE as having met all applicable standards and recommended that the PSB approve her credentials, Plaintiff's supervisor intervened and changed the FPPE rating to reflect that Plaintiff had not met the performance standards. Further, Plaintiff's supervisor changed the PSB recommendation to falsely indicate that she needed to remain on the FPPE for another six months, thus extending the unjustified elevated level of scrutiny on Plaintiff.

68. The unjustified, elevated levels of scrutiny imposed on Plaintiff caused her significant anxiety and distress, as well as physical manifestations of those conditions, including loss of sleep, stomach problems and elevated blood pressure. These conditions caused Plaintiff to miss work and therefore interfered with Plaintiff's ability to do her job

69. Beginning on or about July 1, 2021, Plaintiff's supervisor ignored the Final Decision and deviated from standard Agency procedure when he refused to approve Plaintiff's sick leave requests and reported her as being "Absent Without Leave" ("AWOL"). AWOL charges are adverse because they can lead to discipline. Plaintiff was ultimately charged Leave Without Pay for her absences, despite the fact that she should have had well over 300 hours of paid sick leave available to her.

70. On or about July 19, 2021, Plaintiff's supervisor issued her a letter of counseling falsely accusing her of not adhering to VA norms for requesting and using leave. The letter of counseling threatened she would be charged AWOL.

71. On or about July 28, 2021, Plaintiff requested annual leave to take a vacation. Plaintiff's supervisor once again refused to acknowledge the Final Decision, declared she had no leave available and charged her with AWOL. Plaintiff was ultimately charged LWOP for taking her vacation, despite the fact that she should have had well over 1,000 hours of paid annual leave available to her.

72. From September 1, 2021 through October 14, 2021, Plaintiff's supervisor harassed her by deviating from the terms of Plaintiff's 2015 settlement agreement when he assigned her to work multiple noon to midnight shifts. Working those shifts aggravated Plaintiff's pre-existing and recently developed health conditions.

73. On September 6, 2021, Plaintiff's supervisor deviated from standard Agency policy when he refused to compensate Plaintiff for the holiday when she worked Labor Day.

74. On September 8, 2021, Plaintiff's supervisors notified her that as part of the extended FPPR, they would again be sending her cases for external review. This decision caused Plaintiff additional anxiety and distress because she knew from prior experience that the RMR-VAMC could and would manipulate the external review to obtain the results it needed to proceed with another wrongful termination.

75. From October 15, 2021 through November 29, 2021, Plaintiff's supervisor continued to ignore the VA's Final Decision when he repeatedly denied Plaintiff's sick and FMLA leave requests, and also continued charging her LWOP.

76. Plaintiff found, as any reasonable person in her position would find, the additional levels of scrutiny imposed upon her, the unjustified criticism of her work performance, the actual and threatened AWOL charges against her, and being charged LWOP when she had earned more than 1,400 combined hours of leave were so severe or pervasive that they altered the terms, conditions and privileges of her employment and created a hostile and abusive work environment.

77. The RMR-VAMC's wrongful termination of Plaintiff and revocation of her medical privileges were obviously severe adverse actions and they clearly affected the terms, conditions and privileges of her employment. Further, when the VA forced the RMR-VAMC to reinstate Plaintiff, the Agency's decision to return her to the same chain of command that had wrongly removed her from federal service and revoked her privileges created a hostile work environment. And the mistreatment she received from her supervisors thereafter continued the hostile and abusive work environment.

### THIRD CLAIM FOR RELIEF

(Retaliation in Violation of Title VII and the ADEA)

78. Plaintiff incorporates paragraphs 1-77 of this Complaint as if set forth fully herein.

79. As described above, Plaintiff filed a discrimination complaint in 2015 which identified Dr. Javier Perez as an individual who had discriminated against her based on her sex.

80. As described above, in March 2019 Plaintiff informed her chain of command that Dr. Perez had previously discriminated against her and that she would oppose his being appointed as the Chief of the Emergency Department because she feared he would

retaliate against her.

81. In June 2019, within a few weeks of Dr. Perez' appointment as the Chief of the Emergency Department, Plaintiff's supervisors began subjecting her to a higher level of scrutiny, harassment and adverse actions as described in paragraphs 41-45 above.

82. During the VA-DAB hearing which followed Plaintiff's December 2019 removal, the proposing and deciding officials (Dr. Parmley and Mr. Kilmer) each testified they knew about Plaintiff's 2015 EEO complaint and they held it against her when they made their proposal and decision.

83. Plaintiff initiated the EEO complaint process for her First Complaint at issue herein on August 15, 2019. RMR-VAMC leadership was notified of her first complaint on September 19, 2019. Just two months later, on November 22, 2019, the RMR-VAMC proposed to remove Plaintiff from Federal Service and Revoke her Privileges. Less than a month after that, on December 16, 2019, the RMR-VAMC issued its decision removing Plaintiff from Federal Service and Revoking her privileges.

84. On August 2, 2021, Plaintiff initiated her Second Complaint at issue herein. Plaintiff's supervisor learned of the complaint shortly thereafter, as evidenced by the fact that he personally provided a response to that complaint on August 18, 2021.

85. Just two weeks after learning about Plaintiff's Second Complaint, on or about September 1, 2021, Plaintiff's supervisor changed her work schedule in violation of her 2015 settlement agreement. A few days later, on September 6, 2021, Plaintiff's supervisor refused to pay her for the holiday when she worked Labor Day.

86. On September 8, 2021, approximately three weeks after learning about Plaintiff's Second Complaint, her supervisors notified her that as part of the extended FPPR, they would again be sending her cases for external review.

87. From October 15 through November 29, 2021, Plaintiff's supervisor repeatedly denied her sick and FMLA leave requests, charging her LWOP when he knew she was entitled to hundreds of hours of sick leave.

88. In addition, when the VA ordered Plaintiff to appear for a conference related to her Second Complaint, Plaintiff's supervisor initially denied her request for leave to attend the conference. After learning he could not do that, Plaintiff's supervisor agreed she could attend the conference, but told her she would be marked AWOL if she was absent more than one hour.

89. Plaintiff found, as any reasonable person in her position would find, that the actions her supervisors took after learning of her complaints were materially adverse. Further, if not for the fact that she was already on record as having engaged in the discrimination complaint process Plaintiff, like any reasonable employee, would have found the Agency's conduct so adverse that she would have been dissuaded from participating in the process.

**FOURTH CLAIM FOR RELIEF**

(Constructive Discharge Based on Sex and/or Age)

90. Plaintiff incorporates paragraphs 1-89 of this Complaint as if set forth fully herein.

91. As described above, Plaintiff endured nearly three years of disparate treatment,

harassment, a wrongful termination and a hostile work environment.

92. The Agency's treatment of Plaintiff caused her mental anguish, exacerbated her pre-existing physical health conditions and created new health problems for her. When Plaintiff attempted to use the more than 1, 300 hours of paid leave she accrued to care for herself, she was further harassed, denied leave, threatened and charged with AWOL and forced to take Leave Without Pay.

93. On December 1, 2021, Plaintiff concluded that she had no choice but to resign her federal position in order to protect her health, her reputation, and prevent yet another wrongful discharge.

WHEREFORE, Plaintiff Dr. Sandra Baker respectfully requests that this Court enter judgment in her favor and against the Defendant, and award her all relief as allowed by law and equity including, but not limited to:

a. Retroactive appointment to her position as an Emergency Room Physician;

b. Back pay and all attendant benefits;

c. Front pay and all attendant benefits;

d. Compensatory damages including, but not limited to, those for physical and emotional injury, distress, loss of reputation and embarrassment;

e. Pecuniary damages for losses and expenses incurred as a result of the discriminatory and retaliatory treatment;

f. Restoration of all leave hours Plaintiff used due to the effects of the discriminatory and retaliatory conduct;

    g. Expungement of all negative information from her official personnel files;

    h. Pre-judgment and post-judgment interest at the highest lawful rate;

    i. Tax enhancement;

    j. Attorney fees and costs; and

    k. Such other and further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 20th day of September, 2022.

By:    Counsel for Plaintiff Dr. Sandra Baker

*s/Marisa Williams*
Williams & Rhodes LLP
7887 E. Belleview Ave. #1100
Englewood, CO 80111
303-220-0303
303-840-7370 (fax)
Mlw@williamsandrhodes.com

Madeline Collision
Benezra & Culver, P.C.
733 17th Street, Suite 1450
Denver, Colorado 80202
(303) 716-0254
(720) 838-4632 (cell)
mcollison@bc-law.com

Plaintiff's address:

2540 South Zinnia Way
Lakewood, CO 80228